IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TANYA BETH CIHLAR,                                    OPINION AND ORDER

           Plaintiff,                                    15-cv-560-bbc

     v.

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

           Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Tanya Beth Cihlar has filed this action seeking judicial review of the social security commission's denial of her application for supplemental social security income. Plaintiff contends that the commission's decision was erroneous for two reasons: (1) the administrative law judge found moderate limitations in concentration, persistence or pace, but failed to account for these limitations in his residual functional capacity assessment and the hypothetical question he posed to the vocational expert; and (2) the vocational expert's testimony regarding the number of jobs available to plaintiff was "suspect" and conflicted with the Dictionary of Occupational Titles. Plaintiff requests that the case be remanded for additional proceedings so that these alleged errors can be corrected.

After reviewing the parties' briefs and the record, I conclude that plaintiff is not entitled to a remand. In his residual capacity assessment and hypothetical question to the vocational expert, the administrative law judge accounted properly for plaintiff's various

1

mental limitations underlying his step three conclusion that she had moderate limitations with concentration, persistence or pace. Moreover, I conclude that the vocational expert's testimony did not conflict with the Dictionary of Occupational Titles and that plaintiff should have raised any objection regarding the foundation for the vocational expert's testimony at the hearing. Accordingly, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

## RECORD FACTS

Plaintiff applied for supplemental social security income in January 2010. In her application, plaintiff alleged that she had been disabled since February 1, 2008. (Plaintiff later amended the alleged disability onset date, changing it from February 1, 2008 to January 1, 2011.) A hearing was held in October 2012 before an administrative law judge, who decided that plaintiff was not disabled. Plaintiff filed a request for review of the administrative law judge's decision, which the Appeals Council granted. The Appeals Council vacated the administrative law judge's decision and remanded plaintiff's application for further consideration.

A second hearing on plaintiff's application was held in July 2014. Plaintiff was represented by counsel and testified at this hearing. The administrative law judge also took testimony from an impartial vocational expert. In August 2014, the administrative law judge issued his decision, again concluding that plaintiff was not disabled. Plaintiff filed another request for review with the Appeals Council, but this request was denied, making the

administrative law judge's August 2014 decision the final decision of the Commissioner.

In his decision, the administrative law judge performed the required five-step sequential analysis set forth in 20 C.F.R. § 404.1520. At step one, he determined that plaintiff had not engaged in substantial gainful activity since January 1, 2011, the amended alleged disability onset date. Although plaintiff worked after this date with her boyfriend tearing down barns and reselling the reclaimed lumbar, this work did not qualify as "substantial gainful activity" because the income from this work was not reflected in her earnings record.

At step two, the administrative law judge considered plaintiff's alleged impairments and determined that plaintiff had two "severe" impairments: (1) degenerative disc disease of the lumbar spine with a history of disc replacement surgery and (2) a learning disorder. This determination was based on the administrative law judge's review of the medical records, which indicated that plaintiff received her first diagnosis of degenerative disc disease in January 2010, when an x-ray showed that her disc was degenerating at the L5-S1 level. At a March 2010 appointment with an orthopedist, plaintiff described her back problems as "unbearable." Plaintiff's orthopedist recommended that she undergo disc replacement surgery, which was eventually performed in September 2010. Between the time of the surgery and July 2012, plaintiff would frequently go to the emergency rooms of different hospitals complaining of significant back pain. Her pain was treated with over-the-counter medications, injections and narcotic painkillers, including Vicodin and Percocet. However, after July 2012, plaintiff did not report any lower back pain until a February 2014

3

emergency room visit, which was the last time she received any medical care for her lower back condition.

Plaintiff's learning disorder was first diagnosed following a consultative evaluation conducted in September 2010 by Robert J. Schedgick, Ph.D.  Schedgick reported that plaintiff had a verbal IQ of 76, a performance IQ of 86 and full scale IQ of 72, which fell within the borderline range of intellectual functioning.   Following his examination, Schedgick's diagnosis was generalized anxiety disorder, attention deficit disorder and a learning disorder.  (Plaintiff does not challenge the administrative law judge's findings that plaintiff's generalized anxiety disorder and attention deficit disorder were not severe impairments.)   Schedgick noted that plaintiff had mild difficulties focusing and concentrating and had "significant anxiety."  However, he reported that plaintiff could interact "very nicely with supervisors, coworkers and the public" and that she "could attend adequately to a task if not bound by time."

In addition to the conditions set out above, the administrative law judge considered plaintiff's treatment in February 2014 for depressive symptoms, anxiety and panic attacks. However, the administrative law judge determined that these conditions did not "cause more than minimal limitations in [plaintiff's] ability to perform basic mental work activities and [were] therefore nonsevere."  All told, the administrative law judge determined that there was "little objective evidence regarding [plaintiff's] mental impairments" and that plaintiff "required almost no medical care for her mental symptoms."

At step three, the administrative law judge determined that plaintiff's impairment of

4

degenerative disc disease of the lumbar spine did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04. The administrative law judge also determined that plaintiff's mental impairments did not meet or medically equal any condition in Listing 12.02.  In reaching this conclusion with respect to plaintiff's mental impairments, the administrative law judge considered the "paragraph B" criteria and determined that plaintiff had no limitations in activities of daily living, no episodes of decompensation, mild restriction in her social functioning and "a moderate limitation in her ability to maintain adequate concentration, persistence or pace." AR 37.

After making his step three finding that plaintiff's degenerative disc disease and learning disorder were severe impairments, but were not necessarily disabling, the administrative law judge evaluated plaintiff's residual functional capacity.  He concluded that after consideration of the entire record, plaintiff possessed the residual functional capacity to perform the following:

> [L]ight work . . . that is unskilled in nature, routine with no constant decision-making or work place changes, no production pace rate, only occasional postural activities with no rope/ladder/scaffold climbing, and continuous standing or walking of no more than 45 minutes without a 1-to-2 minute period of position change.

Id. The limitation to light work with only occasional postural activities, no rope, ladder or scaffold climbing and no continuous standing or walking was intended to account for plaintiff's degenerative disc disease and her history of back pain.

The administrative law judge also explained how the residual functional capacity

assessment accounted for plaintiff's "moderate restriction in her ability to maintain adequate concentration, persistence or pace." A.R. 42. First, the administrative law judge credited Dr. Schedgick's determination that plaintiff had a low IQ score, indicating that she had "borderline intellectual functioning." Id. Second, the administrative law judge credited Dr. Schedgick's determination that plaintiff had "very mild difficulty in focusing and concentrating." Id. These limitations were not debilitating, as evidenced by the fact that plaintiff could care for her children, look and apply for work, help her children with their homework and file her taxes independently. Id. Moreover, plaintiff was able to sustain self-employment at a substantial gainful activity level and maintain necessary tax records related to this self-employment. Id.

At the fourth and fifth steps, the administrative law judge concluded that plaintiff could not perform any of her past relevant work as a handy person, a clean-up worker or a housekeeper. However, he did find that plaintiff could perform other work available in the national economy, so she was not disabled. His determination was based in part on the vocational expert's testimony that someone with plaintiff's age, education, work experience and residual functional capacity could work as a price marker, a router or a labeler. The vocational expert testified that in the national economy there were 270,667 price marker jobs, 52,794 router jobs and 26,509 labeler jobs. The vocational expert's testimony was based on information derived from the Dictionary of Occupational Titles. Because plaintiff could make the transition to other jobs available in the national economy, the administrative law judge determined that plaintiff was not disabled and denied her application for

supplemental social security income.

OPINION

A.  Concentration, Persistence or Pace

Plaintiff argues that the administrative law judge erred by presenting a hypothetical question to the vocational expert that "did not adequately encapsulate" plaintiff's limitations.  I disagree.  Although plaintiff is correct that the hypothetical question did not refer specifically to plaintiff's "moderate limitations in concentration, persistence or pace," it does not need to when the administrative law judge adequately accounts for the limitations that gave rise to such a finding.  O'Connor-Spinner v. Astrue, 627 F.3d 614, 619 (7th Cir. 2010); Johansen v. Barnhart, 314 F.3d 283, 285 (7th Cir. 2002); Arnold v. Barnhart, 473 F.3d 816, 820 (7th Cir. 2007).  In this case, the administrative law judge's residual functional capacity assessment and hypothetical question accounted for plaintiff's learning disorder, which formed the basis for the administrative law judge's step three finding that plaintiff had moderate limitations in concentration, persistence or pace.

The administrative law judge found that plaintiff's moderate difficulty "maintain[ing] adequate concentration, persistence or pace" was attributable to her "learning disorder and borderline intellectual functioning."  AR 42.  The residual functional capacity assessment and hypothetical question accounted for this limitation by restricting plaintiff to unskilled, routine work that did not involve constant decision-making.  Limiting plaintiff to this type of work was appropriate because "unskilled, routine work" necessarily excludes intellectually

taxing occupations that someone with plaintiff's mental limitations would be incapable of performing.  The reasonableness of this limitation was buttressed by the fact that it was consistent with the types of tasks plaintiff testified she was able to perform, notwithstanding her learning disorder.

Plaintiff argues that the administrative law judge erred by ignoring Dr. Schedgick's assessment that plaintiff "had difficulty doing tasks in a fast manner" and failing to "account for any limitation in work pace."  Plt.'s Br., dkt. #10, at 10.  I disagree with this argument as well. The administrative law judge's residual functional capacity assessment specifically excluded  "production or pace rate work," thereby limiting plaintiff to jobs she did not have to perform in a "fast manner."

Plaintiff does not identify any other mental health problems related to her moderate limitations with concentration, persistence or pace that the administrative law judge failed to take into account.  It is not enough for plaintiff simply to allege that the administrative law judge generally failed to take into account her difficulties with "concentration, persistence or pace" because that step three finding is not a limitation in and of itself; it is merely a way for the administrative law judge to describe and assess the severity of plaintiff's actual, credible mental health limitations at step three of the five-step sequential evaluation process.  SSR 96-8p addresses this point, cautioning adjudicators to

> remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not a [residual functional capacity] assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and

8

C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized in the [Psychiatric Review Technique Form].

I disagree with plaintiff that the administrative law judge failed to explain how he arrived at the restrictions set forth in the residual functional capacity assessment and the hypothetical question. As he explained, plaintiff's learning disabilities supported a finding that plaintiff had moderate limitations in maintaining concentration, persistence or pace, but her testimony regarding her day-to-day activities and her ability to operate a business with a partner supported the administrative law judge's finding that she could perform unskilled, routine work. To the extent plaintiff is arguing that this explanation should have accompanied the hypothetical question and been provided to the vocational expert at the hearing, plaintiff cites no authority to suggest that such an explanation is required in that context.

Finally, even if the administrative law judge's hypothetical question to the vocational expert was not an adequate reflection of plaintiff's limitations with respect to concentration, persistence or pace, plaintiff forfeited any such objection by failing to raise it during the hearing. Ragsdale v. Shalala, 53 F.3d 816, 819 (7th Cir. 1995) ("[Plaintiff] did not ask the expert if and to what extent he had considered [his] tinnitus, hearing loss, or medical side effects in rendering his vocational assessments. . . . [Plaintiff's] failure to protect his own interests below cannot constitute sufficient ground for us to cast aside a prior opinion."). Plaintiff was represented by counsel at the hearing and was given an opportunity to question the expert and object to the administrative law judge's hypothetical. Plaintiff's counsel took advantage of this opportunity by asking for clarification with respect to how the hypothetical

9

incorporated plaintiff's ability to interact with supervisors and coworkers, but plaintiff does not contend on appeal that the hypothetical was deficient in this respect.  Plaintiff's failure to object to the hypothetical on the ground that it did not reflect her concentration, persistence or pace limitations prevents her from raising the issue on appeal.

### B.   Vocational Expert's Testimony

Plaintiff attacks the vocational expert's testimony as unreliable and lacking adequate foundation. First, she argues that the vocational expert's testimony regarding the number of jobs available to plaintiff is "suspect" because it was not accompanied by an adequate explanation and because the vocational expert relied on the Dictionary of Occupational Titles, which has been criticized as outdated.  Second, plaintiff argues that "since the [administrative law judge] did not define the additional limitations in the hypothetical question, there is no way to be sure that the [administrative law judge's] hypothetical question actually excluded jobs which [plaintiff] could not perform." Plf.'s Br., dkt #10, at 24.  Both of these arguments fail because any problems regarding the basis for a vocational expert's opinion must be raised during the administrative hearing.  Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an [administrative law judge] is entitled to accept the vocational expert's conclusion[.]").

Plaintiff contends that the administrative law judge erred by not identifying these problems with the vocational expert's testimony and seeking clarification on his own when

the problems presented "conflicts" with the <u>Dictionary of Occupational Titles</u>.  However, plaintiff does not identify any specific conflict between the vocational expert's testimony and the <u>Dictionary</u>.  The fact that the hypothetical included limitations that were not included in the <u>Dictionary</u> does not bring the vocational expert's testimony into conflict with the information that is set forth in it.

Finally, plaintiff is not entitled to a remand simply by stating that the figures the vocational expert provided were "suspect." Although the <u>Dictionary of Occupational Titles</u> may not have been revised recently, that does not mean it is necessarily unreliable or that the information it contains is wrong.  If plaintiff believed that the testimony offered by the vocational expert was incorrect, she could have raised that issue at the hearing and presented what she believes are correct figures.


ORDER

IT IS ORDERED that plaintiff Tanya Beth Cihlar's motion for summary judgment, dkt. #9, is DENIED and the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED.  The clerk of court is directed to enter

judgment for defendant and close this case.

Entered this 12th day of September, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

12